UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Kelly A. Jones, | ) |
|           *Plaintiff,* | ) |
| v. | ) Cause No. 2:20-CV-468 RLM-JPK |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|           *Defendant* | ) |

OPINION AND ORDER

Kelly A. Jones seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3). The court heard argument on August 3, 2022, and now REVERSES and REMANDS the Commissioner's decision.

I.     BACKGROUND

Kelly Jones filed an application for Title XVI supplemental security income for a period of disability beginning August 1, 2011. Ms. Jones's application was denied initially and upon reconsideration, a video hearing and a supplemental telephonic hearing ensued. Maria DeLeon, a vocational expert, testified at the first hearing. Ms. Jones and Dr. Hugh Savage (an impartial medical expert) testified at the supplemental hearing. Attorney Karen Lomeo (who no longer

1

represents Ms. Jones) represented Ms. Jones at the supplemental hearing. Ms. Jones submitted additional records within five days of the hearing, and the Administrative Law Judge admitted them into the record.

Ms. Jones previously filed applications for disability. The field office denied the first application in 2013, and another ALJ denied the second application in 2017.

The ALJ denied this application for Title XVI supplemental security income on December 11, 2019, concluding that:

1. Ms. Jones has not engaged in substantial gainful activity since July 31, 2017.

2. Ms. Jones has the following severe impairments: fibromyalgia, diabetes mellitus, morbid obesity, headaches, degenerative joint disease of knees and shoulders, asthma, benign paroxysmal positional vertigo, major depressive disorder, generalized anxiety disorder, and attention deficit and hyperactivity disorder (ADHD) (20 C.F.R. 416.920(c)).

3. Ms. Jones does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Ms. Jones has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except the claimant can lift/carry and push/pull up to 10 pounds frequently and less than 10 pounds occasionally. She can sit for six hours in an eight-hour day and stand/walk for two hours in an eight-hour day with the use of a cane when needed for ambulation. She can never reach overhead bilaterally. She can occasionally climb ramps and stairs, balance, stoop, and crouch. She can never climb ladders, ropes, or scaffolds, kneel, or crawl. She can never work at unprotected heights or near moving mechanical parts. She can never operate a motor vehicle. She can never work in humidity, wetness, dust, odors, fumes and pulmonary irritants, and never in extreme cold or extreme heat. The claimant can perform simple and routine tasks. She can interact with supervisors, coworkers and the public on an occasional basis and have brief and superficial contact (defined as no lower than an 8 in terms of the 5th digit of the DOT code).

4. Ms. Jones is unable to perform any past relevant work.

5. Ms. Jones was born on May 9, 1974, and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed. Ms. Jones subsequently changed age category to a younger individual age 45-49.

6. Ms. Jones has at least a high school education.

7. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. The ALJ indicated that he considered the vocational expert's testimony that Ms. Jones would be able to perform occupations with an SVP of two, such as: addresser (about 5,500 positions in the national economy); and stuffer (4,000).

9. Ms. Jones has not been under a disability as defined by the Social Security Act from July 31, 2017, through the date of the decision.

The ALJ concluded that Ms. Jones wasn't disabled within the meaning of the Social Security Act and therefore wasn't entitled to disability benefits. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F. 3d 1155, 1160 (7th Cir. 2010). The appeal followed.

## II.   STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a logical bridge between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

### III. DISCUSSION

Ms. Jones argues the ALJ's decision was unsupported based on: (1) issues with vocational expert's testimony at Step 5; (2) the ALJ's assessment and consideration of mental and physical limitations; (3) and the ALJ's assessment of subjective symptoms.

*A. The Vocational Expert's Testimony at Step 5*

Ms. Jones argues that the ALJ's decision at Step 5 was unsupported based on issues with the vocational expert's testimony. An ALJ has a limited burden at Step 5 of showing that sufficient jobs exist in the national economy for the claimant. 20 C.F.R. §§ 404.1512(b)(3), 404.1560(c)(2). Ms. Jones argues that the vocational expert's testimony shouldn't constitute substantial evidence on its own because the vocational expert didn't provide any reason for any reasonable degree of confidence in his estimates and that the ALJ didn't do enough to develop the vocational expert's testimony so that it could stand on its own. Although the vocational expert testified that there were sufficient jobs for Ms. Jones in the national economy, a review of the vocational expert testimony shows that it is likely deficient.

The vocational expert stated, without any explanation, that Ms. Jones could perform certain positions, such as addresser (5,500 positions), and stuffer (4,000 positions), but didn't explain at all how she arrived at the estimated job numbers. The ALJ didn't question the accuracy of these numbers but only asked if the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. The DOT doesn't include the number of job available; it simply provides job descriptions. Thus, there is no way to determine how the vocational expert arrived at the job numbers.

The Commissioner argues that Ms. Jones waived any argument related to the methodology the vocational expert used to job numbers because a claimant must confront a vocational expert's methodology to challenge it on appeal. *See*

e.g. Winkel v. Kijakazi, No. 3:20-cv-715-DRL, 2021 WL 4988528, at *10 (N.D. Ind. Oct. 27, 2021). However, as our court of appeals recently explained in Ruenger v. Kijakazi, 23 F.4th 760, 763 (7th Cir. 2022), the vocational expert testimony must provide a path by which a reviewing court can ascertain how the vocational expert arrived at the job numbers.

Ms. Jones's proceedings would've been more efficient had she or her counsel objected at the hearing, but she didn't need to object at the hearing to preserve any error, and the ALJ bears the Step 5 burden to probe about the vocational expert's methodology. In Ruenger v. Kijakazi, the court explained that even before the claimant objects, substantial evidence requires assurances that the vocational expert has used reliable methodology, which means it's based on well-accepted sources and includes a cogent and thorough explanation of the methodology. 23 F.4th at 763. The court suggested that if the claimant objects, then the ALJ should probe more, "compel[ling] the vocational expert to offer a 'reasoned and principled explanation' of the methodology she used to produce the estimate." Id. (citing Chavez v. Berryhill, 895 F.3d 962, 970 (7th Cir. 2018)). The Ruenger court went on to explain that it couldn't "review her methodology, let alone confirm that it was reliable," since the vocational expert didn't explain how she compiled job numbers. Id. That's true, as well, for the vocational expert that evaluated Ms. Jones's case. The record has a source for job titles and requirements but doesn't contain evidence or testimony of the methodology to estimate job numbers.

Ms. Jones also argues that the RFC prohibits the occupation "addresser," and that the "addresser" role doesn't exist in significant numbers. According to the vocational expert, there are a total of 9,500 jobs nationwide that meet the requirements for Ms. Jones. The Commissioner responds that our court of appeals has held that 1,000 national jobs is a significant number, citing to Mitchell v. Kijakazi, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. Jul. 22, 2021); Weatherbee v. Astrue, 649 F. 3d 565, 572 (7th Cir. 2011); and Liskowitz v. Strue, 559 F. 3d. 736, 743 (7th Cir. 2009).

The cases cited by the Commissioner all refer to significant number in the context of number of jobs in a region, versus nationally. *See e.g.* In Mitchell v. Kijakazi, 2021 WL 3086194, at *7 (finding that 30,000 jobs represented by two occupations constituted a significant number); Weatherbee v. Astrue, 649 F. 3d at 572 (finding that 3,900 jobs in the regional economy and 140,000 jobs in the national economy were a significant number); Liskowitz v. Astrue, 559 F. 3d at 743 (finding that 4,000 in a city and surrounding areas was a significant number).

On the other hand, only one district court case within this circuit has determined that a number below 20,000 jobs nationally is a significant number. *See* Dorothy v. Berryhill, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019). This court determined that 14,500 jobs, or about 1 out of every 10,000 jobs, in the national economy is not a significant number of jobs. James A. v. Saul, No. 19-CV-180, 2020 WL 3888155, at *3 (N.D. Ind. July 10, 2020).

7

Ms. Jones's record, specifically the vocational expert's testimony, has a source for job titles and requirements, but no evidence of a methodology to estimate job numbers, so the ALJ didn't meet the Step 5 burden. Because ALJ's decision is unsupported at Step 5, the proper remedy is a new Step 5 hearing so that the vocational expert "may be able to expand on her testimony of make some other showing that significant jobs exist for [the claimant]," and where Ms. Jones "will have the opportunity to challenge such a showing." Ruenger v. Kijakazi, 23 F.4th at 764. The court need not determine whether 9,500 job is a significant number for purposes of the Step 5 analysis since the vocational expert will have the opportunity to make a showing that significant jobs exist on remand. Having found error at Step 5, the court reverses and remands for the limited purpose of a new Step 5 hearing.

*B. Ms. Jones's mental and physical limitations into the hypothetical and RFC*

Ms. Jones makes two sets of arguments about the ALJ's analysis of Ms. Jones's limitations: 1) a lack of substantial evidence in the ALJ's mental assessment and 2) a lack of substantial evidence in the ALJ's physical assessment.

*1. Mental Assessment*

The ALJ limited Ms. Jones to performing simple and routine tasks with occasional, brief, and superficial contact with supervisors, coworkers, and the public. Ms. Jones argues that the ALJ's mental assessment is deficient because it 1) didn't specifically address the type of judgment and amount of time Ms.

8

Jones could stay focused; 2) was inconsistent with a consultative examination that found that Ms. Jones was unable to complete serial sevens and the examiner's opinion that found that Ms. Jones wasn't capable of independently managing her funds; and 3) in general didn't account for the finding that Ms. Jones had moderate limitations in her ability to concentrate, persist, or maintain pace.

First, Ms. Jones argues that the ALJ's failure to assess the type of judgment and the amount of time Ms. Jones could stay focused, results in the RFC's failure to accurately capture the stress of the job. Ms. Jones cites to Stephanie H. v. Comm'r of Soc. Sec., No. 20 C 4600, 2021 WL 2986298, at *6 (N.D. Ill. July 14, 2021) to support her argument, but that case doesn't support any requirement that the ALJ assess the type of judgment and amount of time Ms. Jones could stay focused. Instead, the case affirmed the commissioner's decision to decline the claimant benefits because the ALJ took into the nuances of the claimant's mental limitations – specifically addressing the importance of a low stress environment. The parties cite no case law that requires an ALJ to specifically address the type of judgment and the amount of time Ms. Jones to concentrate. Remand isn't appropriate on this issue.

Next, Ms. Jones argues that the ALJ didn't explain how the RFC's limitation was consistent with or supported by the opinion of a medical expert. The consulting examiner noted that Ms. Jones couldn't handle her own funds and had problems with serial sevens. The Commissioner says that the consulting examiner's opinion that Ms. Jones could not handle her finances was suspicious

because Ms. Jones did handle her own finances. Ms. Jones argues that an ALJ can only reject an examining physician's opinion for reasons supported by substantial evidence.

The presumption that the consulting physician's opinion should be given more weight, set forth in 20 C.F.R. 416.927(c)(1), only applied to claims filed before March 27, 2017 – not within the timeframe that Ms. Jones filed her claim. But even under 20 C.F.R. 416.927(c)(1), the ALJ gave a good explanation for giving limited weight to the consulting physician's report. Our court of appeals has noted that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled ... can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014). The ALJ found that the consulting physician's opinion wasn't consistent with the overall record, including Ms. Jones's own testimony that she handled her own finances and remained able to drive, cook, shop, and spent her time reading for most of the day. Further, the ALJ gave limited weight to the consulting physician's opinion because Ms. Jones demonstrated only some limitation in calculation and in concentration, and otherwise her mental status was normal. Given that the ALJ considered this information and appropriately relied on contradictory evidence to give limited weight to the consultative physician, the court declines Ms. Jones's invitation to reweigh that evidence. See Gedatus v. Saul, 994 F.3d 893, 903 (7th Cir. 2021). Remand isn't appropriate on this basis.

10

Ms. Jones argues that the ALJ "took a shortcut" by failing to connect the limitations included in the hypothetical to Ms. Jones's documented difficulties in concentration, persistence, or pace. The ALJ concluded that Ms. Jones had a moderate limitation in her ability to concentrate, persist, or maintain pace. In his analysis, the ALJ considered Ms. Jones's reports and history of her difficulty in concentrating, focusing, following instructions, and completing tasks. The ALJ also considered evidence such as Ms. Jones's ability to drive, prepare meals, read, play games, manage funds, use the internet, and handle her own medical care. In addition, the ALJ considered the treatment and examination records, including consideration of a consulting psychologist, Ms. Jones's mental health treatment records, and contradicting evidence from Ms. Jones. The ALJ considered that Ms. Jones had trouble concentrating at the consultative examination and that supported limiting Ms. Jones to simple and routine tasks.

Ms. Jones argues that the RFC assessment didn't adequately account for Ms. Jones's inability to concentrate, persistent, or maintain pace, because in most cases, a restriction to simple, routine, or repetitive work doesn't accommodate moderate limits in concentration or pace. *See* Moreno v. Berryhill, 882 F. 3d 722, 730 (7th Cir. 2018). But there is no categorical rule that a limitation to simple and routine tasks is always insufficient to encompass limitations relating to concentration, persistence, or pace. For example, in Jozefyk v Berryhill, the court of appeals found that that an RFC assessment that included a limitation to simple, routine tasks when supported by evidence. 923 F. 3d 492, 497-498 (7th Cir. 2019). Similarly, the court of appeals affirmed the

11

ALJ's RFC assessment limiting the claimant to simple, routine, and repetitive tasks and simple work-related decisions. Burmester v. Berryhill, 920 F. 3d 507, 511 (7th Cir. 2019); *see also* Morrison v. Saul, 806 F. App'x 469, 473-474 (7th Cir. 2020). A restriction to simple, routine, or repetitive work to accommodate moderate limits in concentration or pace isn't by itself grounds for remand.

The court can't substitute its judgment for the ALJ's judgment. Gotts v. Kijakazi, 27 F.4th 1273, 1278 (7th Cir. 2022). So long as an ALJ's conclusions are "reasoned and supported by substantial evidence", the court must affirm. Id. Ultimately, the ALJ's findings sufficiently rely on Ms. Jones's testimony, the findings and opinion of the consulting examiner, and medical and treatment records to substantiate a finding that Ms. Jones can complete simple and routine tasks. The court can't remand on this basis.

*2. Physical Assessment*

Ms. Jones next argues that the ALJ's finding that that Ms. Jones is physically limited to a range of sedentary work with additional limitations without explanation of excluding the medical expert's restriction of no reaching while seated is ground for remand. Ms. Jones argues that although the ALJ accepted medical expert Dr. Savage's opinion, the ALJ's hypothetical to the vocational expert, referring to a question regarding the residual functional capacity determination – didn't reflect all of the limitations the medical expert found.

An ALJ can't cherry-pick the parts of the medical expert's testimony that supported his finding of no disability and ignore the part that didn't, Myles v. Astrue, 582 F.3d 672, 678 (7th Cir.2009), but Dr. Savage never said Ms. Jones had a reaching limitation. Instead, Dr. Savage testified:

> She – here in my estimation, the only type of activity that she could possibly engage in would be a type of activity where – she could possibly engage in would be a type of activity where – she couldn't reach – like, she would be sedentary. And the reason for that is because she could not spend more than two hours on her feet.

[R. 50].

Contrary to Ms. Jones's argument, this testimony doesn't establish a restriction of no reaching, as explained in the ALJ's opinion. The ALJ's opinion does not create a situation where he is cherry-picking evidence to support his conclusion and remand is not proper.

### C. Ms. Jones's Subjective Symptoms

Finally, Ms. Jones makes several arguments about why the subjective symptom analysis is unsupported.

ALJs must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p. "An ALJ need not address every piece of evidence, but he may not ignore entire swaths of it that point toward a finding of disability." Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). An ALJ must "provide a 'logical bridge' between the evidence and the

conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). An ALJ's decision is valid so long as it "sufficiently articulate[s] their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002).

Factors relevant to an ALJ's assessment of symptom testimony are a claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication a claimant takes to alleviate symptoms; and treatments received (other than medications) to alleviate symptoms. 20 C.F.R. § 416.929(c)(3). "[A]n ALJ need not discuss every detail related to every factor . . . ." Gedatus v. Saul, 994 F.3d 893, 903 (7th Cir. 2021). "And the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." Id.

An ALJ evaluating a claimant's subjective systems follows a two-step process: 1) the ALJ considers whether Ms. Jones's impairment could reasonably be expected to produce the symptoms she alleges, such as pain, and 2) the ALJ considers whether the record supports the symptoms Ms. Jones alleges. 20 C.F.R. § 416.929(a). Ms. Jones's arguments relating to her subjective symptoms center around her fibromyalgia pain and morbid obesity.

If after reviewing a claimant's symptom testimony considering the whole record "an ALJ gives specific reasons supported by the record, [courts] will not overturn his credibility determination unless it is patently wrong. Credibility

determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." Curvin v. Colvin, 778 F.3d 645, 651 (7th Cir. 2015) (internal citations omitted).

Ms. Jones first argues that the ALJ's use of the phrasing "the evidence does not fully support the extent of the alleged limitations . . ." means that the ALJ did not apply the standard in the regulations which is stated as whether Ms. Jones's allegations could "reasonably be accepted as consistent with the objective medical evidence and other evidence." The court of appeals has rejected the argument that the use of certain language as opposed to the legal standard to articulate that the weight of the evidence is or is not supported by the record. *See* Gedatus v Saul, 994 F. 3d 893, 900 (7th Cir. 2021); *see also* Schomas v. Colvin, 732 F. 3d 702, 708 (7th Cir. 2013). As long as the ALJ provides a reasonable explanation and support for finding that the weight of the evidence didn't support Ms. Jones's allegations regarding the intensity, persistence, and limiting effects of her symptoms, the ALJ's decision isn't to be remanded on this basis.

Next, Ms. Jones argues that the ALJ dismissed the severity of her symptoms in a variety of ways. Ms. Jones argues that the ALJ gave too much weight to her ability to perform daily tasks. The Commissioner argues that the ALJ's analysis of Ms. Jones's daily activities was proper and that any failure to address evidence in the record was harmless error, as the ALJ noted Ms. Jones could take care of her house and children, drive, use the internet, and cook. The ALJ properly considered Ms. Jones's daily activities as a single factor in his

analysis, not as the basis for proving Ms. Jones had the ability to perform full-time work. The ALJ considered Ms. Jones's allegations in detail, and then explained why he found that the evidence didn't fully support Ms. Jones's allegations concerning the limitations caused by the impairments. [R. 22, 26-27]. The ALJ drew his conclusions from viewing the record as a whole regarding Ms. Jones's allegations regarding the intensity, persistence, and limiting effects of her symptoms. Ms. Jones's argument contests how the ALJ considered Ms. Jones's ability to perform daily tasks but doesn't identify errors that the court could correct without reweighing the evidence.

Lastly, Ms. Jones argues that the ALJ didn't review her GAF score of 48 when assessing her mental symptoms or adhere to the regulations when considering Ms. Jones's own statements regarding her own fibromyalgia because Social Security Rule 12-2p is never mentioned in the opinion. As a result, Ms. Jones argues, the ALJ didn't connect any of these findings to the conclusion that Ms. Jones's fibromyalgia pain isn't as severe as she alleged. The Commissioner argues that an ALJ isn't required to mention every piece of evidence in the record, and that this ALJ gave specific reasons supported by the record of his opinion of Ms. Jones's fibromyalgia pain.

Ms. Jones doesn't point to any authority that requires the ALJ to mention a GAF score or specific SSRs. The ALJ fully considered Ms. Jones's diagnosis and treatment for fibromyalgia, including her medical treatment, her diagnosis, her response to treatment, and the medical examiner's opinion about her ability to stand. An ALJ has the discretion to make determinations as to how to weigh

the evidence and needn't discuss every piece of evidence presented. The ALJ gave reasonable and specific explanations that addressed Ms. Jones's fibromyalgia and other subjective symptoms so that the ALJ's credibility determination is supported by the record and so not subject to reconsideration. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Therefore, the court affirms the ALJ's decision on the ALJ's evaluations of Ms. Jones's subjective symptoms.

## IV.   CONCLUSION

Based on the foregoing analysis, the court concludes that the ALJ's decision wasn't supported by substantial evidence at Step 5 and REVERSES the decision of the Commissioner and REMANDS for proceedings consistent with this opinion.

SO ORDERED.

ENTERED: September 21, 2022

                                                   /s/ Robert L. Miller, Jr.
                                                   Judge, United States District Court